UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

**KERMAN DAREN ELBERT**,
    Plaintiff,

v.                                                                                    2:24-cv-450-NPM

**COMMISSIONER OF SOCIAL SECURITY**,
    Defendant.

## OPINION AND ORDER

Plaintiff Kerman Daren Elbert seeks judicial review of a denial of Social Security disability benefits. The Commissioner of the Social Security Administration filed the transcript of the administrative proceedings (Doc. 13), Elbert filed an opening brief (Doc. 14), the Commissioner responded (Doc. 18), and Elbert replied (Doc. 19). As discussed in this opinion and order, the decision of the Commissioner is affirmed.

**I.     Eligibility for Disability Benefits and the Administration's Decision**

    **A.     Eligibility**

The Social Security Act and related regulations define disability as the inability to do any substantial gainful activity by reason of one or more medically determinable physical or mental impairments that can be expected to result in death or that have lasted or can be expected to last for a continuous period of not less than

twelve months.[1] Depending on its nature and severity, an impairment limits exertional abilities like walking or lifting, nonexertional abilities like seeing or hearing, tolerances for workplace conditions like noise or fumes, or aptitudes necessary to do most jobs such as using judgment or dealing with people.[2] And when functional limitations preclude both a return to past work and doing any other work sufficiently available in the national economy (or an impairment meets or equals the severity criteria for a disabling impairment as defined in the regulatory "Listing of Impairments"), the person is disabled for purposes of the Act.[3]

## B.   Factual and procedural history

On October 28, 2020, Elbert applied for disability insurance benefits ("DIB") and supplemental security income ("SSI"). (Tr. 15, 90–91). He asserted an onset date of October 2, 2020, alleging disability due to the following: three herniated, slipped discs; diabetes; extreme pain; and cholesterol. (Tr. 60–61). As of the alleged onset date, Elbert was 51 years old and had a tenth-grade education. (Tr. 39, 60, 100). He previously worked as an industrial cleaner. (Tr. 40–41, 53).

---

[1] *See* 42 U.S.C. §§ 416(i), 423(d), 1382c(a)(3); 20 C.F.R. § 404.1505.

[2] *See* 20 C.F.R. §§ 404.1513(a)(2)(i)-(iv) (discussing the various categories of work-related abilities), 404.1522(b) (providing examples of abilities and aptitudes necessary to do most jobs), 404.1545(b)–(d) (discussing physical, mental, and other abilities that may be affected by an impairment), 404.1594(b)(4) (defining functional capacity to do basic work activities).

[3] *See* 20 C.F.R. § 404.1511.

On behalf of the administration, a state agency[4] reviewed and denied Elbert's applications initially on May 7, 2021, and upon reconsideration on October 27, 2021. (Tr. 90–92, 98–100). At Elbert's request, Administrative Law Judge (ALJ) Ryan Johannes held a hearing during which Elbert was represented by an attorney. (Tr. 15–25). On March 14, 2022, the ALJ issued a decision finding Elbert not disabled. (Tr. 31–59). The administration's Appeals Council denied Elbert's request for review. (Tr. 747–752). He then brought the matter to this court for judicial review. (Tr. 753–756). However, the Commissioner subsequently filed an unopposed motion for entry of judgment with remand, which was granted on February 16, 2023. (Tr. 753–758).

On remand, ALJ Johannes held another hearing, which Elbert and his attorney attended. (Tr. 673, 711). On January 19, 2024, the ALJ issued a decision finding Elbert disabled for purposes of his SSI claim as of July 27, 2023, through the date of the decision, in accordance with Medical-Vocational ("Grid")[5] Rule 202.01.

---

[4] In Florida, a federally funded state agency develops evidence and makes the initial determination whether a claimant is disabled. *See* 42 U.S.C. § 421(a); 20 C.F.R. § 404.1503(a).

[5] The "grids" are contained within the Social Security regulations, 20 C.F.R. Part 404, Subpart P, Appendix 2. In certain circumstances, the grids direct or suggest a finding of "disabled" or "not disabled." Grid Rule 202.01 calls for a finding of "disabled" if the claimant is of advanced age (55 or older), can no longer perform any past relevant work, is limited to light work, has less than a high school education, and has either unskilled or no past work experience. Guided by that rule, the ALJ found Elbert disabled because he was within six months of being 55 years old, he had a tenth-grade education, he was limited to less than a full range of light work, and his past relevant work, which he could no longer perform, was unskilled. (Tr. 687).

(Tr. 674, 686–687). With respect to his DIB claim, the ALJ found Elbert not disabled before December 31, 2022, the date last insured. (Tr. 687). Thereafter, Elbert withdrew his exceptions that he filed with the Appeals Council on March 18, 2024, making the ALJ's decision final. (Tr. 697, 701–704). He then brought the matter to this court, and the case is ripe for judicial review.

### C.     The ALJ's decision

The ALJ must perform a five-step sequential evaluation to determine if a claimant is disabled. 20 C.F.R. § 404.1520(a)(1). This five-step process determines:

> (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether these impairments meet or equal an impairment listed in the Listing of Impairments; (4) if not, whether the claimant has the residual functional capacity ("RFC") to perform his past relevant work; and (5) if not, whether, in light of his age, education, and work experience, the claimant can perform other work that exists in significant numbers in the national economy.

*Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015) (internal quotation omitted); *see also* 20 C.F.R. § 404.1520(a)(4).

The governing regulations provide that the Social Security Administration conducts this "administrative review process in an informal, non-adversarial manner." 20 C.F.R. § 404.900(b). Unlike judicial proceedings, Social Security Administration hearings "are inquisitorial rather than adversarial." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1364 (11th Cir. 2018) (quoting *Sims v. Apfel*, 530 U.S. 103, 111 (2000) (plurality opinion)). "Because Social Security hearings

basically are inquisitorial in nature, '[i]t is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits.'" *Id.* Indeed, "at the hearing stage, the commissioner does not have a representative that appears 'before the ALJ to oppose the claim for benefits.'" *Id.* (quoting *Crawford & Co. v. Apfel*, 235 F.3d 1298, 1304 (11th Cir. 2000)). "Thus, 'the ALJ has a basic duty to develop a full and fair record. This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts.'" *Id.* (quoting *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015)).

Nonetheless, while the claimant is relieved of the burden of production during step five as to whether there are enough jobs someone like the claimant can perform, the claimant otherwise has the burdens of production and persuasion throughout the process. *See* 20 C.F.R. § 404.1512 (providing that the claimant must prove disability); *see also Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (noting the regulations "place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work"). In short, the "overall burden of demonstrating the existence of a disability as defined by the Social Security Act unquestionably rests with the claimant." *Washington*, 906 F.3d at 1359 (quoting *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001)).

At step one of the evaluation, the ALJ found that Elbert had not engaged in substantial gainful activity since October 2, 2020, the alleged onset date. (Tr. 676).

5

At step two, the ALJ characterized Elbert's severe impairments as: L5–S1 peripheral annular tear and bilateral facet hypertrophy, lumbar radiculopathy, and cervical osteophyte formations. *Id.* At step three, the ALJ determined that since October 2, 2020, Elbert did not have an impairment or combination of impairments that met or medically equaled the severity of an agency-listed impairment. (Tr. 679).

As a predicate to step four, the ALJ arrived at the following RFC:

[T]he claimant has the residual functional capacity to perform light work … except the claimant is able to occasionally climb stairs and ramps, but never climb ladders and scaffolds; occasionally balance, stoop, kneel, and crouch; never crawl; frequently reach with the nondominant left upper extremity; frequently handle and finger; and avoid concentrated exposure to vibration and avoid all moving mechanical parts and unprotected heights. (Tr. 680).

Consequently, the ALJ found Elbert unable to perform his past relevant work. (Tr. 685). At step five, the ALJ found that prior to July 27, 2023, the date Elbert's age category changed, he could perform other work that exists in significant numbers in the national economy. (Tr. 686). In support, a vocational expert testified (Tr. 719–726) that an individual of Elbert's age, education, work experience, and RFC could perform the following representative occupations:

- *Cafeteria Attendant*, DOT #311.677-010, light, SVP 2, with 100,800 jobs;
- *Merchandise Marker*, DOT #209.587-034, light, SVP 2, with 305,100 jobs;
- *Marker II*, DOT #222.587-038, light, SVP 2, with 27,700 jobs.[6]

---

[6] The DOT numbers refer to the *Dictionary of Occupational Titles* and its detailed explanations concerning each occupation's requirements. These descriptions include exertion and skill levels. Exertion refers to the work—in a purely physical sense—that the job requires, and it is divided into five categories: sedentary, light, medium, heavy, and very heavy. Skill refers to the time it

(Tr. 686). Thus, for purposes of the Act, the ALJ concluded Elbert was not disabled before July 27, 2023, but became disabled on that date and has continued to be disabled through January 19, 2024, the date of the decision. (Tr. 687).

## II. Analysis

This appeal asks whether substantial evidence supports the ALJ's finding that Elbert's subjective complaints were not as intense, persistent, or functionally limiting as he alleged and whether the ALJ adequately articulated why his complaints were inconsistent with other evidence of record.

### A. Standard of review

The court "may not decide the facts anew, make credibility determinations, or reweigh the evidence." *Buckwalter v. Acting Comm'r of Soc. Sec.*, 997 F.3d 1127, 1132 (11th Cir. 2021). While the court must account for evidence both favorable and unfavorable to a disability finding and view the evidence as a whole, *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), the court's review of the administration's decision is limited to determining whether "it is supported by substantial evidence and based on proper legal standards." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d

---

takes—during or before a job, such as prior experience or education—to develop necessary abilities, and it is divided into three categories: unskilled, semiskilled, and skilled. The "SVP" (Specific Vocational Preparation) provides further subdivision of the three skill categories into nine levels: SVP 1 and 2 are unskilled; SVP 3 and 4 are semiskilled; and SVP 5 through 9 are skilled. The expert's job numbers were for the national economy.

1155, 1158 (11th Cir. 2004). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1280 (11th Cir. 2020) (quoting *Crawford*, 363 F.3d at 1158)).

"[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The inquiry is "case-by-case," and "defers to the presiding ALJ, who has seen the hearing up close." *Id.* at 1157. In other words, a "presumption of validity attaches" to the ALJ's factual findings. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987). And if supported by substantial evidence, the ALJ's findings of fact are conclusive. 42 U.S.C. § 405(g). This means the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the court finds that the evidence "preponderates against" the agency's decision. *Noble v. Comm'r of Soc. Sec.*, 963 F.3d 1317, 1323 (11th Cir. 2020) (quoting *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991)).

  **B.** **The ALJ properly evaluated Elbert's subjective complaints in light of the objective medical evidence and other evidence of record.**

Recall that the ALJ denied Elbert's DIB claim because he found that, ***prior to 2023***, Elbert could perform light work, which involves regular and continuous walking and standing for approximately six hours in an eight-hour day. Pointing to his own testimony and other evidence, Elbert contends that the ALJ should have found that he could not continuously walk and stand prior to 2023 due to his back

pain and other pain symptoms, such that he was limited to sedentary work.[7] (Doc. 14 at 4, 11–17). Specifically, Elbert reported in his pain questionnaire that when he bends, pulls, lifts, walks, or drives too long, he experiences pain in his lower back which shoots down the right side of his leg. (Tr. 286). His pain levels are "8 ½ to 9" and he experiences pain every day, despite taking pain medication. (Tr. 286–287). Elbert testified that he is going to pain management and treating with a chiropractor, but his pain remains "unbearable, very painful." (Tr. 717–718).

An ALJ must evaluate a claimant's subjective complaints using a two-step process. SSR 16-3p, 2017 WL 5180304 at *3 (Oct. 25, 2017). First, the claimant must provide evidence of an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce the claimant's symptoms. Second, the ALJ must evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit the claimant's ability to perform work-related activities. *Id*. at *3–4.

If the objective medical evidence does not substantiate the claimant's statements about the intensity, persistence, and functionally limiting effects of symptoms, then the ALJ must consider other evidence in the record to determine if, and to what extent, the claimant's symptoms limit his ability to do work-related

---

[7] According to Elbert, this error is not harmless because the grids would have called for a disability finding if the ALJ had limited him to sedentary work.

9

activities. This may include indications about the location, duration, frequency, and intensity of any symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of medication taken to relieve symptoms; treatment, other than medication, for symptoms; any other measure used to relieve symptoms; the claimant's daily activities; and any other factors concerning functional limitations and restrictions due to symptoms. *See* 20 C.F.R. §§ 404.1529(c), 404.1545(a)(3); SSR 16-3p, 2017 WL 5180304 at *7-8; *Ross v. Comm'r of Soc. Sec.*, 794 F. App'x 858, 867 (11th Cir. 2019). The regulations provide that, generally, a claimant's statements about his symptoms, alone, will not establish disability; there must also be objective medical evidence. *See* 20 C.F.R. § 404.1529(a)–(b).

On this score, the ALJ noted that Elbert reported debilitating impairments of L5-S1 peripheral annular tear and bilateral facet hypertrophy, lumbar radiculopathy, and cervical osteophyte formations, which caused him to experience pain "every day" when bending, pulling, lifting, and driving or walking for "too long." (Tr. 286, 681, 716–719). However, the ALJ found that while Elbert's "medically determinable impairments could reasonably be expected to cause the alleged symptoms, ... the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not fully supported for the reasons discussed in [his] decision [and] are inconsistent due to imaging, findings on examination, treatment history, and activities of daily living." (Tr. 681).

As for findings on examination, the ALJ observed that 2020 and 2021 primary care records showed that Elbert reported no musculoskeletal symptoms and there were no abnormal exam findings. (Tr. 473, 479, 543, 547, 681). In March 2021, despite experiencing tenderness and spasm in his spine, Elbert had normal musculoskeletal range of motion and strength, intact lower extremity sensation, and 5/5 strength of bilateral plantar and dorsal flexion. (Tr. 592-93, 682). In April 2021, Elbert experienced tenderness to palpitation at the right and paraspinal muscles, but he demonstrated 5/5 strength in all four extremities and grip strength, and normal coordination, gait, and reflexes. He did not need an assistive device to walk. (Tr. 585, 682). In December 2021, Elbert presented with spinal tenderness with decreased range of motion. However, he was not in acute distress and had a negative straight leg raise. (Tr. 688). And even after a motor vehicle accident in October 2023, Elbert presented with tenderness of his cervical and lumbar spine, but he displayed no focal or sensory deficits or motor weakness. (Tr. 1173–1174). Based on these findings, the ALJ concluded that the RFC accounted for Elbert's "generally stable findings on examination with 5/5 strength and normal gait with some lumbar and cervical tenderness." (Tr. 682).

The ALJ's decision was also informed by Elbert's treatment history, which he found to be inconsistent with Elbert's debilitating allegations. From 2016 up to 2021, Elbert's treatment history included chiropractic and neurological treatment for neck

11

and back tenderness following a motor-vehicle accident and pain management through epidural injections and oxycodone. However, Elbert did not report musculoskeletal problems. (Tr. 348–395, 400–418, 1011–1021). In March 2021, Elbert was diagnosed with lumbar radiculopathy without spinal cord compression, and he received a right lumbar paraspinal muscular injection, but surgical intervention was not recommended. (Tr. 594–598). In April 2021, Elbert was diagnosed with low back tenderness without radiation, and a couple of months later, Elbert sought to replace his pain medication with medical marijuana. (Tr. 562, 584–585, 633–640). In December 2021, Elbert was diagnosed with degenerative disc disease and mild spinal stenosis due to a motor vehicle accident five years prior. (Tr. 667–668). Elbert's treatment plan included exercise, chiropractic care, physical therapy, and acupuncture.[8] (Tr. 669).

In 2023, Elbert presented for treatment for neck and back tenderness and was diagnosed with paracervical and paralumbar tenderness. (Tr. 1029–1032). Nevertheless, Elbert had 100% range of motion in his cervical and lumbar spine and a normal gait with no gross motor deficits of the flexors or extensors and no sensory

---

[8] In his discussion of treatment history, the ALJ noted that Dr. Michael L. Lemon completed a two-page, physical-capacity evaluation in January 2022, limiting Elbert to standing, walking, and/or sitting for three hours in an eight-hour day. In addition, Lemon concluded that Elbert was able to lift 10 pounds occasionally but unable to perform fine manipulation, bend, squat, crawl, or climb. (Tr. 615–616, 683). However, the ALJ found Lemon's opinion unpersuasive because Elbert had no treatment history with Lemon, rather Elbert treated with Dr. Eric Spivak from Lemon's office. Furthermore, Lemon failed to provide any support for his opinion. (Tr. 683).

deficits. (Tr. 1029). And Elbert continued with chiropractic care following another car accident in October 2023. (Tr. 1166–1170).

The ALJ also summarized the radiologists' impressions of images of Elbert's cervical and lumbar spine. In 2016, an MRI of Elbert's cervical spine revealed he had shallow protrusion disc osteophyte complex at multiple levels, with minimal, if any ventral cord flattening noted at C4–5 through C6–7, and no cord compression or edema. (Tr. 681, 398). And the 2016 MRI of his lumbar spine showed shallow right paracentral protrusion and eccentric right disc bulge at L3–4 with mild right foraminal stenosis and shallow protrusion and broad-based disc bulge at L5–S1 with foraminal and lateral recess narrowing. (Tr. 681, 397).

In 2023, Elbert underwent a cervical CT scan which showed mild multi-level cervical spondylosis, while a lumbar MRI revealed he had multilevel spondylotic changes, most pronounced at L3–L4 and L5–S1, retrolisthesis with disc bulge and right central/subarticular disc protrusion results in mild canal stenosis, mild biforaminal narrowing and right lateral recess stenosis at L3–L4, and mild disc bulge with small central disc extrusion extending slightly inferior results in bilateral lateral recess narrowing and moderate biforaminal narrowing at L5-SI. (Tr. 681, 1005, 1009, 1175). Additional imaging in October 2023, showed Elbert's lumbar spine had broad disc herniation compressing the thecal sac and causing mild narrowing of the bilateral neural foramina, disc bulge compressing the thecal sac and causing mild

13

narrowing of the bilateral neural foramina at L4–L5, and right disc herniation compressing the thecal sac and causing mild narrowing of bilateral neural foramina at L5–S1. (Tr. 681, 1203–1204). The ALJ found that Elbert's ability to perform light work, including climbing, postural, manipulative, and hazard limitations, accommodates his cervical and lumbar imaging. (Tr. 681).

Finally, the ALJ considered Elbert's daily activities of walking to stay fit, driving to appointments and stores, preparing simple meals, taking out the garbage, attending to his personal care, and managing his medications. (Tr. 287–288). The ALJ reasoned that although Elbert's impairments may cause limitations, the abilities required to perform his daily activities are the same as those necessary for maintaining employment and "do not support limitations of function consistent with a complete inability to perform all work activity." (Tr. 683). In sum, the ALJ concluded:

> Even if the claimant's daily activities are as truly limited as alleged, it is difficult to attribute that degree of limitation to the claimant's medical conditions, as opposed to other reasons, in view of the relatively benign medical evidence and other factors discussed in this decision. The medical evidence, and in particular, the clinical signs and objective evidence contained in imaging and diagnostic testing, treatment notes, physical and mental status examinations, and the claimant's high level of daily activities do not support limitations of function consistent with a complete inability to perform all work activity. Accordingly, the claimant's ability to participate in such [daily] activities undermines the persuasiveness of his allegations of disabling functional limitations. *Id.*

We are satisfied that the ALJ's thorough review of the imaging, findings on examination, treatment history, and activities of daily living supplies more than a

scintilla of relevant evidence that a reasonable person would accept as adequate to find that Elbert was not as limited as he alleged and could perform the limited range of light-duty work described in the RFC. *See Mennella v. Comm'r of Soc. Sec.*, 697 F. App'x 665, 666-676 (11th Cir. 2017). Elbert's arguments to the contrary are unconvincing.

Elbert maintains that the ALJ's decision improperly rests on the ALJ's lay interpretation of medical evidence. (Doc. 14 at 12-15). But it is the core responsibility of the ALJ to make functional assessments based on the medical and other evidence. *See Santiago v. Kijakazi*, No. 8:21-cv-588-SPF, 2022 WL 2449762, *7 (M.D. Fla. July 6, 2022) (citing *Mitchell v. Comm'r of Soc. Sec.*, 771 F.3d 780, 782 (11th Cir. 2014) (The assessment of the claimant's "subjective complaints [is] the province of the ALJ.")). "Such an argument applies, instead, to scenarios where the ALJ reaches medical conclusions about the claimant's condition, rather than legal conclusions about the claimant's ability to work." *Sickmiller v. Saul*, No. 8:19-cv-3087-SPF, 2021 WL 1186846, *7 (M.D. Fla. Mar. 30, 2021) (citing *Marbury v. Sullivan*, 957 F.2d 837, 840-41 (11th Cir. 1992)).

Here, the ALJ did not reach medical conclusions about Elbert's condition. To the contrary, he considered the *radiologists' impressions* of images (as opposed to raw medical data); Elbert's relatively benign exam findings; his conservative, non-surgical treatment for cervical and lumbar tenderness; and his high level of daily

activities to conclude that Elbert was capable of a limited range of light-duty work. Put simply, the ALJ performed his duty and made a functional and not a medical assessment.

Elbert also asserts the ALJ used cherry-picked evidence to conclude that the alleged intensity, persistence, and limiting effects of pain was not consistent with the medical and other evidence of record. (Doc. 14 at 13–15). But an ALJ is not guilty of cherry picking by merely specifying "the evidence that supports his conclusion." *Spencer v. Kijakazi*, No. 8:21-cv-946-WFJ-TGW, 2022 WL 8224085, *4 (M.D. Fla. Aug. 26, 2022). And "[a]n ALJ is not required to refer to every piece of evidence in his decision." *Raulerson v. Acting Comm'r of the SSA*, No. 3:20-cv-972-MCR, 2022 WL 855765, *10 (M.D. Fla. Mar. 23, 2022). Thus, to succeed on such an alleged point of error, the claimant must persuade us that the ALJ failed to consider the totality of the evidence. Elbert has failed to do so.

Here, the ALJ considered the evidence as a whole—as Elbert concedes—which showed that despite mild, multi-level, cervical spondylosis and lumbar spine herniations and disc bulges, Elbert denied musculoskeletal complaints; demonstrated 5/5 strength in all four extremities and normal coordination, gait, and reflexes; received no recommendation for surgical intervention; and could perform daily activities incompatible with disabling limitations. (Tr. 348-95, 400-18, 473, 479, 543, 547, 562, 585, 594-98, 669, 681-82, 1011-21, 1029, 1173-74). While

16

Elbert cites evidence that may corroborate his description of symptoms and limitations, under a substantial-evidence standard, this will not do. A claimant "must do more than point to evidence in the record that supports [his] position; [he] must show the absence of substantial evidence supporting the ALJ's conclusion." *Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2017). In other words, we may not entertain invitations to reweigh the evidence.

Next, Elbert takes issue with the ALJ's finding that his daily activities do not suggest an inability to perform a limited range of light work because the ALJ purportedly failed to acknowledge that he sporadically performs them. (Doc. 14 at 16–17). But this ignores the fact that the ALJ acknowledged his testimony and found that "even if the claimant's daily activities are as truly limited as alleged, it is difficult to attribute that degree of limitation to the claimant's medical conditions, as opposed to other reasons, in view of the relatively benign medical evidence and other factors discussed in [the ALJ's] decision." (Tr. 683). While not dispositive, a claimant's activities may show that his symptoms are not as limiting as alleged. *See* 20 C.F.R. § 404.1529(c)(3)(i); *see also Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005); *Stacy v. Comm'r, Soc. Sec. Admin.*, 654 F. App'x 1005, 1011 (11th Cir. 2016). Furthermore, the ALJ did not unduly rely on Elbert's activities in deciding his claim, nor did the ALJ find his activities to be dispositive evidence of his ability to work. Instead, the ALJ properly considered Elbert's activities together

with the other evidence in accordance with the regulations. On the whole, the ALJ's characterization of Elbert's daily activities is supported by substantial evidence in the record, even if Elbert does not believe it's the most favorable characterization. *See Carr v. Comm'r of Soc. Sec.*, No. 22-12989, 2024 WL 94149, *3 (11th Cir. Jan. 9, 2024). Thus, Elbert has failed to establish any error.

Lastly, Elbert asserts that the ALJ failed to articulate why the objective medical evidence and other evidence of record were inconsistent with his subjective complaints. (Doc. 14 at 12–16). If the ALJ discredits this testimony, then the ALJ "must clearly articulate explicit and adequate reasons for doing so." *Ross v. Comm'r of Soc. Sec.*, 794 F. App'x 858, 867 (11th Cir. 2019) (quoting *Dyer*, F.3d at 1210). The ALJ may consider the consistency of the claimant's statements along with the rest of the record to reach this determination. *Id.* Such findings "are the province of the ALJ, and we will not disturb a clearly articulated credibility finding supported by substantial evidence." *Id.* (quoting *Mitchell*, 771 F.3d at 782). A decision will be affirmed as long as the decision is not a "broad rejection which is not enough to enable [a reviewing court] to conclude that the ALJ considered [the claimant's] medical condition as a whole." *Dyer*, 395 F.3d at 1211.

The ALJ neither broadly rejected Elbert's subjective complaints about his cervical and lumbar spine and the resulting pain nor failed to support his findings. Instead, the ALJ thoroughly summarized the reviewable medical evidence and

18

articulated his findings through citations to the medical record and his analysis of the available evidence. In doing so, the ALJ considered Elbert's condition as a whole and found that the imaging, treatment notes, generally stable findings on examination, and Elbert's daily activities undermined the persuasiveness of his allegations of disabling limitations. Because the ALJ correctly applied the law and adequately explained his findings, which are supported by substantial evidence, we must affirm.

## III.  Conclusion

Upon consideration of the submissions of the parties and the administrative record, substantial evidence supports the ALJ's decision, and there was either no error or no harmful error in the ALJ's application of the proper legal standards. Accordingly, the decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g), and the clerk is directed to enter judgment in the Commissioner's favor, terminate all scheduled events, and close the case.

**ORDERED** on September 29, 2025

_____
NICHOLAS P. MIZELL
United States Magistrate Judge